Matter of Michael M. v Makiko M. (2025 NY Slip Op 02832)

Matter of Michael M. v Makiko M.

2025 NY Slip Op 02832

Decided on May 8, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 8, 2025

CV-23-2225
[*1]In the Matter of Michael M., Respondent,
v
Makiko M., Appellant.

Calendar Date:March 25, 2025

Before:Egan Jr., J.P., Pritzker, Lynch, Ceresia and Mackey, JJ.

Lindsay H. Kaplan, Kingston, for appellant.
Michelle I. Rosien, Philmont, for respondent.
Betty J. Potenza, Milton, attorney for the child.

Ceresia, J.
Appeal from an order of the Family Court of Ulster County (Anthony McGinty, J.), entered October 10, 2023, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the divorced parents of the subject child (born in 2008). Pursuant to a 2018 custody order entered on consent, the mother had sole legal custody of the child, with the exception that the father had final decision-making authority concerning the treatment of the child's skin condition. The mother also had primary physical custody, with overnight parenting time for the father every Wednesday night and on alternate weekends.
In May 2021, the father filed a modification petition seeking sole legal and primary physical custody. The mother then filed a violation petition. Following a seven-day fact-finding hearing conducted between January 2022 and February 2023, as well as a subsequent Lincoln hearing, Family Court granted the father's modification petition, finding that there had been a change in circumstances and that modification was in the child's best interest. Sole legal and primary physical custody were granted to the father, with the mother having overnight parenting time on alternate weekends as well as time on certain holidays and during the summer. The court also dismissed the mother's violation petition. The mother appeals.[FN1]
We affirm. "A party seeking to modify a prior order of custody must show that there has been a change in circumstances since the prior order and, then, if such a change occurred, that the best interests of the child would be served by a modification of that order" (Matter of David BB. v Danielle CC., 216 AD3d 1281, 1282 [3d Dept 2023] [internal quotation marks and citation omitted]; see Matter of John M. v Tashina N., 218 AD3d 935, 936 [3d Dept 2023]). "Inasmuch as Family Court is in a superior position to evaluate witness credibility, this Court will defer to its factual findings and only assess whether its determination is supported by a sound and substantial basis in the record" (Matter of David JJ. v Verna-Lee KK., 207 AD3d 841, 843 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Daniel XX. v Heather WW.,180 AD3d 1166, 1167 [3d Dept 2020]).
With regard to whether the father demonstrated a change in circumstances, this may be shown "where the parties' relationship has deteriorated to a point where there is no meaningful communication or cooperation for the sake of the child" (Matter of John EE. v Jalyssa GG., 222 AD3d 1219, 1221 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see Matter of Nicole B. v Franklin A., 185 AD3d 1166, 1166 [3d Dept 2020]). Our review of the record confirms Family Court's finding that, although the parties had longstanding difficulty cooperating and communicating in their coparenting relationship, the situation had worsened [*2]since entry of the previous custody order. The parties were unable to agree on numerous issues involving the child including vaccination, academic tutoring, testing for a learning disability, mental health counseling and participation in sports, requiring court intervention that had been met with only limited success. For example, despite certain orders and stipulations designed to provide for the child to receive academic tutoring and to participate in golf tournaments and ski races on days when she was in the mother's care, this occurred inconsistently, resulting in the child being forced to navigate these issues between the parties. Telephone calls generally led to the parties hanging up on one another, and both the mother and her attorney acknowledged that communication was poor and there was little agreement between the parties. Thus, the father established the requisite change in circumstances, warranting reexamination of the child's best interests (see Matter of John EE. v Jalyssa GG., 222 AD3d at 1221-1222; Matter of Brandon E. v Kim E., 167 AD3d 1293, 1294 [3d Dept 2018]).
"In determining whether modification of a prior custody order will serve the best interests of the child, courts must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Nathan PP. v Angela PP.,205 AD3d 1082, 1083 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Barrett LL. v Melissa MM.,224 AD3d 942, 943 [3d Dept 2024], lv denied 42 NY3d 905 [2024]). Family Court, largely crediting the father's testimony over that of the mother, held that the father had demonstrated the ability to provide better support for the child's home life, academic needs and athletic interests. Having considered the hearing evidence as well as the transcript of the Lincoln hearing, we conclude that the court's determination is amply supported.
Initially, regarding the child's respective living arrangements, she had more personal space and privacy at the father's home, whereas privacy was lacking at the mother's home. Next, although the child had academic struggles, it appeared that she had been improperly placed in a program in the mother's school district for students who speak English as a second language — perhaps due to the fact that the mother speaks Japanese to the child at home, although the child responds in English — and that this program may have kept the child from thriving academically. As a result, the father hired academic tutors for the child and her grades improved, but the mother frequently refused to allow the child to be tutored during the mother's parenting time. Similarly, the mother often [*3]did not allow the child to participate in her preferred sports of golf and skiing, causing the child to fall behind in these sports. In addition, the mother had never attended any of the child's ski races or golf tournaments. By contrast, the father paid the fees for the child's involvement in sports, transported her to practices and tournaments, paid for private instruction and generally supported the child's love for these activities.
While the mother argues that Family Court placed undue weight on the father's superior financial resources, the court expressly indicated that this was not the primary factor upon which it was relying, and instead emphasized the mother's lack of support for the child's chosen pursuits. Indeed, the mother perceived the child's interests as being forced upon her by the father and therefore actively resisted them, which the court found to be detrimental to the child. Given the foregoing, and noting that the attorney for the child is supportive of the custody modification, we decline to disturb the ruling (see Matter of Anthony YY. v Emily ZZ., 189 AD3d 1924, 1925 [3d Dept 2020]).
As for the mother's argument that her parenting time has been too drastically reduced, we disagree. Family Court provided the mother with regular and meaningful access to the child, including weekend time as well as the same vacation and holiday schedule that had been established in the prior custody order. Although there was no provision for a midweek visit, the record reflects that the child's extracurricular activities take up a significant amount of her time and do not always fall on the same days from week to week. Inasmuch as a primary concern in this case was the mother's interference with the child's extracurricular activities and refusal to permit them during her parenting time, it is our view that the court properly exercised its discretion to provide consistency for the child during the week when fashioning a parenting time schedule (see Matter of Samantha E. v Nicholas F., 233 AD3d 1295, 1298-1299 [3d Dept 2024]; Matter of Michael T. v Dana U., 232 AD3d 1058, 1063 [3d Dept 2024]; Matter of Shaffer v Woodworth, 175 AD3d 1803, 1804 [4th Dept 2019]).
Egan Jr., J.P., Pritzker, Lynch and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: On appeal, the mother has raised no issues concerning the dismissal of her violation petition.